UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
REGINALD WHITE, also known as Robert
Boodie,

                Plaintiff,

   -against-

CAPTAIN DOUGLAS HESS,
LIEUTENANT DAVID GONZALEZ,
LIEUTENANT LIZETTE TAMAYO,
LIEUTENANT WILLIAM THOMPSON,
LIEUTENANT PATRICK HENDERSON,
OFFICER FERNANDO LOPEZ, OFFICER
BRYAN JIMINEZ, OFFICER JOSEPH
RAMOS, OFFICER ALEXANDER
DELGADO, and OFFICER MICHELLE
GANT,

                Defendants.
-------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
14-CV-03339 (CBA) (LB)

**AMON, United States District Judge:**

Plaintiff Reginald White,[1] proceeding pro se, brings this action against Defendants, who served as jail officials at the Metropolitan Detention Center in Brooklyn ("MDC Brooklyn") when he resided there as a presentencing detainee from May 2009 to September 2013. White asserts constitutional claims pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

In a Memorandum and Order dated March 31, 2016 (the "2016 M&O"), the Court dismissed many of White's claims, some with prejudice and some without; granted pre-discovery summary judgment as to others; upheld certain claims; and granted leave to amend the pleadings. (Docket Entry ("D.E.") # 45.) On November 14, 2016, White filed a Second Amended Complaint.

---

[1] According to Federal Bureau of Prisons "Find an Inmate" online public records, White's name is Robert Boodie, and he resides at United States Penitentiary McCreary in Pine Knot, Kentucky.

1

(D.E. # 54 "SAC".) He withdrew some claims on January 27, 2017. (D.E. # 59.) Defendants answered the Second Amended Complaint on February 10, 2017, (D.E. # 61), and discovery proceeded until July 14, 2017, (see D.E. # 68). On November 20, 2017, Defendants filed a post-discovery motion for summary judgment. (See D.E. # 73.) This Memorandum and Order serves as a disposition of Defendants' motion for summary judgment. For the reasons stated below, that motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

White's Second Amended Complaint raises a variety of constitutional claims against Lieutenant Thompson, Lieutenant Tomayo, Lieutenant Gonzalez, Officer Delgado, Captain Hess, Lieutenant Henderson, Officer Jiminez, Officer Ramos, Officer Hicks, Officer Patino, and Officer Frazier.[2][3] Those claims include allegations that Defendants denied White access to the courts, used excessive force against him, retaliated against him for exercising his First Amendment rights, and imposed allegedly unconstitutional conditions of confinement. White's conditions of confinement claims include claims that he was denied recreation time, (SAC ¶ 3), change of clothes, and toiletries, (SAC ¶¶ 11, 12, 15), (collectively, "non-medical conditions of confinement claims"), as well as that he was denied medical care, (SAC ¶ 20).

---

[2] Although their names are listed in the case caption, White has not made any allegations against Officers Gant or Lopez. (See generally SAC.) These individuals are accordingly dismissed.

[3] Neither Officer Hicks, nor Officer Patino, nor Officer Frazier were named in the caption of the Second Amended Complaint. These individuals were not mentioned at all in the original Complaint or the First Amended Complaint. The Court declines to consider claims against these officers. White's Second Amended Complaint was filed November 14, 2016, outside the three-year limitations period applicable to a Bivens claim. See Chin v. Bowen, 833 F.2d 21, 24 (2d Cir. 1987). Claims against Officers Hicks, Patino, and Frazier do not "relate back" to the original complaint under Federal Rule of Civil Procedure 15(c)(1)(C) because there is no indication that they were not initially named due to "a mistake concerning the proper defendant's identity." Krupski v. Costa Crociere S.p.A., 560 U.S. 538, 552 (2010). Further, when the Court granted leave to amend in its 2016 M&O, it did not grant leave to add additional defendants.

2

**I.  White's Claims**

White's access to courts claims, non-medical conditions of confinement claims, and First Amendment retaliation claims fail as a matter of law.  Accordingly, there is no need to outline here his allegations as to those claims.  With respect to the remaining claims—for excessive force and deliberate indifference to his medical needs—the facts that give rise to them are stated below.

**A. Excessive Force**

White claims that Defendants subjected him to excessive uses of force on three separate occasions, one involving Lieutenant Gonzalez ("Gonzalez Excessive Force Claim"), and two involving Lieutenant Henderson ("Henderson Excessive Force Claims).

<u>First</u>, on February 13, 2013, White claims that "Gonzalez entered into [his] cell . . . while [he] was in full restraints and assaulted [him]," and that Gonzalez "continued to threaten [him] while grabbing [him] by the neck and pressing [his] head against the wall, while telling [him] he would kill [him]."  (SAC ¶ 14.)  For his part, Gonzalez describes the events of February 13, 2013 as follows:

> Around 7:30 p.m., White assaulted an officer by throwing an unknown liquid substance at him.  White made verbal threats to the staff and threatened to continue throwing unknown substances.  He then refused an order to submit to hand restraints to remove the contraband from his cell.  The SHU staff engaged in confrontation avoidance, which resulted in White submitting to hand restraints around 9 p.m.  A use of force team escorted White out of his cell and to the medical unit for evaluation.  No injuries were found or reported.  White was then escorted back to his cell without incident.

(D.E. # 73-7 ("Gonzalez Decl.") ¶ 5.)  Gonzalez continued that "[d]ue to his threats, White was placed in ambulatory restraints in his cell until he became calm.  Medical staff and SHU staff evaluated White every two hours.  No injuries were found or reported."  (Id. ¶ 6.)  He claims not to have pushed White against the wall, nor threatened to kill him.  (Id. ¶ 9.)  He also claims that

the use of force "was made pursuant to and in compliance with BOP Program Statement numbered P5566.06." (Id. ¶ 10.)

Second, White makes two related claims against Henderson. He states that "[s]omewhere between February of 2013 and March of 2013," Henderson placed him in wrist restraints so that he could have his blood drawn. (SAC ¶ 17.) While in restraints, White claims "Henderson came into [his] cell and aggressively grabbed [him] around [his] throat area and dragged [him] out of the cell into the hallway and threw [him] onto the floor." (Id.) He further states that he "hit [his] head and blacked out." (Id.) The following day, White claims "Henderson came into [his] cell while [he] was in restraints and order[ed] the use-of-force team to remove the restraints and [Henderson] proceeded to assault [him]." (SAC ¶ 19.) In his declaration, White described the same events and states that they led to serious injuries to his neck, back and shoulder. (D.E. # 78 ("White Decl.") ¶¶ 13–14.) Henderson provided a different account, describing the events as follows:

> For the time period of February to March, 2013, I was involved in only one use of force regarding White. On February 27, 2013, I was the Lieutenant assigned to the SHU. Around 2:30 p.m. that day, White blocked his cell window to prevent staff from conducting their rounds and further refused to submit to hand restraints to permit a search of his cell. The SHU staff engaged in confrontation avoidance, but White continued to barricade his door with a mattress and refused staff orders. A use of force team placed White in restraints and removed White from the cell. I did not grab or assault White during the use of force. White was evaluated by medical staff following the use of force and no injuries were found or reported.

(D.E. # 73-8 ("Henderson Decl.") ¶ 9.) He added: "I have never grabbed White by the neck or assaulted him, and I have never threatened to kill or assault him." (Id. ¶ 10.) Defendants claim that White did not file an administrative grievance regarding the Henderson Excessive Force Claims. (D.E. # 73-3 ("56.1 Stat.") ¶¶ 96f, 96g, 105e, 105f.)

4

In an affidavit prepared contemporaneously to his Second Amended Complaint, White swore that "because of the continued assaults" he has "continuing back pains that cause him to walk abnormally and difficulties sitting up or getting out of bed" as well as "PTSD," which gives him "continued nightmares" and makes him "very apprehensive" when he is around correction officers. (D.E. # 54-1 ("White Aff.") ¶¶ 6–7.)

**B. Conditions of Confinement—Deliberate Indifference to Medical Needs**

White also claims that he was denied all medical treatment, despite having "open wounds" and potentially broken ribs, following the assaults allegedly perpetrated against him, which are described above. (SAC ¶ 20.) White offers no evidence to corroborate his claim. Defendants deny the allegation. (D.E. # 61 ("Ans.") ¶ 35.) Regarding the Gonzalez Excessive Force Claim, Gonzalez declared that White was "escorted . . . out of his cell and to the medical unit for evaluation" where "[n]o injuries were found or reported" and thereafter "[m]edical staff and SHU staff evaluated White every two hours." (Gonzalez Decl. ¶¶ 5–6.) Regarding the Henderson Excessive Force Claims, Henderson declared that "White was evaluated by medical staff following the use of force and no injuries were found or reported." (Henderson Decl. ¶ 9.) Defendants state that White did not file an administrative complaint regarding his deliberate indifference to medical needs claim arising from the Henderson Excessive Force Claims. (56.1 Stat. ¶¶ 96h, 105g.)

**II.  Administrative Grievances**

As noted above, Defendants claim that that White failed to follow the administrative grievance procedure explicated in 28 C.F.R. §§ 542.10–19 and BOP Program Statement 1330.18 with respect to a number of his claims, despite having submitted such administrative complaints and appeals on 232 occasions, both before and after the alleged events. (D.E. # 73-5 ("Hugar Decl."), Ex. 4.) White claims that he "used the remedies [that] were made available," but that "any and all other copies of attempts to file Administrative Remedies were confiscated or taken from

[his] cell." (SAC at 7.) He further explained in his declaration that "[w]hen attempting to mail out grievances and other legal mail, the named Defendants and/or their agents would tell [him] 'You know these are going in the trash.'" (White Decl. ¶ 5.) He added:

> At other times when I would be attempting to mail out my grievances involved with this complaint Captain Hess and/or Lieutenant Henderson would read them and tell me 'You ain't never gonna learn; You like having your property taken? Didn't we tell you to stop filing these grievances or you are gonna stay in a strip-cell?' and they would throw them back under my door.

(Id. ¶ 6.) He said he was in fact placed in a strip-cell for filing such grievances. (Id. ¶ 7.) Further, he "was afraid to continue to attempt to exhaust [his] administrative remedies because [he] did not want [his] legal work confiscated." (Id. ¶ 8.) As noted above, Hess and Henderson deny that they impeded White's filing of administrative complaints. (D.E. # 73-6 ("Hess Decl.") ¶ 14; Henderson Decl. ¶¶ 8, 11.)

\* \* \*

Defendants have moved for summary judgment, arguing (1) failure to exhaust administrative remedies; (2) lack of a damages remedy under Bivens; (3) failure to prove a constitutional violation; (4) qualified immunity; and (5) sovereign immunity.

**STANDARD OF REVIEW**

A court grants summary judgment under Federal Rule of Civil Procedure 56 only when, "construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in [his] favor," Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 108 (2d Cir. 2013), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," id. (quoting Fed. R. Civ. P. 56(a)).

Because White appears pro se, the Court construes his submissions liberally to raise the strongest arguments they suggest, Warren v. Colvin, 744 F.3d 841, 843 (2d Cir. 2014), and

6

"examine[s] every claim or defense with a view to determining whether summary judgment is legally and factually appropriate," Jackson v. Fed. Express, 766 F.3d 189, 198 (2d Cir. 2014). "Nonetheless, '[p]roceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment.'" Angulo v. Nassau Cty., 89 F. Supp. 3d 541, 549 (E.D.N.Y. 2015) (alteration in original) (quoting Rodriguez v. Hahn, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002)).

## DISCUSSION

As noted above, Defendants argue failure to exhaust administrative remedies, lack of a damages remedy under Bivens, failure to prove a constitutional violation, qualified immunity, and sovereign immunity. The Court addresses in turn each argument with respect to each claim to which it relates.

### I. Exhaustion of Administrative Remedies

Defendants argue that the majority of White's claims are barred by his failure to exhaust the administrative remedies available to him while at MDC Brooklyn. (D.E. # 73-2 ("Def. Br.") at 4–8; 56.1 Stat. ¶¶ 96, 105 (listing unexhausted claims); id. ¶¶ 65–88 (explaining administrative grievance procedure at MDC Brooklyn).) The Court concludes that a material dispute of fact precludes summary judgment on the issue of administrative exhaustion at this juncture.

Although White acknowledges that he filed administrative complaints inconsistently, (see White Decl. ¶¶ 6–8), administrative exhaustion under the Prison Litigation Reform Act ("PLRA") is not required when administrative remedies are not "available" because "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross v. Blake, 136 S. Ct. 1850, 1860 (2016). White seeks to take advantage of this exception, arguing that the Defendants "would throw [his complaints] back

7

under [his] door," (White Decl. ¶ 6), that Defendants would tell him "[y]ou know these are going in the trash" when he attempted to mail grievances, (id. ¶ 5), and that he was afraid to file grievances because "[he] did not want [his] legal work confiscated," (id. ¶ 8).

Defendants argue that White's "bald assertions" do not preclude summary judgment because there is "undisputed evidence" that White "successfully filed multiple administrative claims or appeals during almost every month that he was housed at MDC Brooklyn." (D.E. # 79 ("Def. Reply") at 3, 5.) White has filed well over 200 administrative remedy requests and appeals while incarcerated. (Hugar Decl., Ex. 4.) However, White's successful filing of some administrative grievances does not preclude him from showing that he was prevented from filing others. The Seventh Circuit's decision in Kaba v. Stepp, 458 F.3d 678 (7th Cir. 2006), is instructive. In Kaba, "prison officials . . . argue[d] that no reasonable factfinder could find that administrative remedies were not available to [the plaintiff], because he filed three grievances while at [the facility] prior to [an] attack, including . . . several days before the beating, and he filed both an FTCA claim and this lawsuit within days of the attack." 458 F.3d at 685. The Seventh Circuit disagreed, stating:

> We agree with [plaintiff] that a more discriminating analysis is necessary. The ability to take advantage of administrative grievances is not an "either-or" proposition. Sometimes grievances are clearly available; sometimes they are not; and sometimes there is a middle ground where, for example, a prisoner may only be able to file grievances on certain topics.

Id. As in Kaba, a reasonable factfinder, if White's account is credited, could conclude that although White was able to file many administrative complaints, Defendants intimidated him or otherwise prevented him from filing others. A reasonable factfinder might, for instance, conclude that Defendants allowed White to file administrative complaints that they concluded were frivolous while throwing away the complaints that they felt posed a threat of subjecting them to

liability or punishment. The Court therefore declines to grant summary judgment as to any claims on this ground.

## II. Availability of Bivens Remedy

Defendants also seek summary judgment on White's access to courts, First Amendment retaliation, and non-medical conditions of confinement claims on the basis that he does not have a right of action to assert these claims under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). (Def. Br. at 8–17.)[4]

Under Ziglar v. Abbasi, 137 S. Ct. 1843 (2017), courts must undertake a two-step inquiry to determine whether an individual has a Bivens right of action. First, a court must determine whether a case presents a new context. "If the case is different in a meaningful way from previous Bivens cases decided by [the Supreme] Court, then the context is new." Abbasi, 137 S. Ct. at 1859. If the case presents a new context, a remedy should be extended only if there exists no "alternative remedial structure" or "special factors counselling hesitation." Id. at 1858, 1859. The Court addresses White's access to courts, First Amendment retaliation, and non-medical conditions of confinement claims in turn.

### A. Access to Courts

As noted above, White asserts a number of claims premised on Defendants having denied his access to the courts in connection with his criminal case. The Supreme Court has recognized that "prisoners have a constitutional right of access to the courts," Bounds v. Smith, 430 U.S. 817, 821 (1977), abrogated on other grounds by Lewis v. Casey, 518 U.S. 343 (1996), although the Supreme Court has never definitively explicated the source of that right. Even without clarity on

---

[4] Defendants do not move against White's excessive force claims, (SAC ¶¶ 14, 17, 19), nor his claim for deliberate indifference to his medical needs, (SAC ¶ 20), on this ground.

9

the source of the right, the Court concludes that White's access to courts claims present a new Bivens context because they are "different in a meaningful way from previous Bivens cases decided by [the Supreme] Court." Abbasi, 137 S. Ct. at 1859. That is because White's claims "bear little resemblance" to "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma," the contexts previously recognized by the Supreme Court. Id. at 1860.

Moving on to the second step of Abbasi, an adequate "alternative remedial structure" exists to protect White's access to the courts. Id. at 1858. In order to prove an access to courts claim, White must show both (1) denial of "meaningful access to the courts," Bounds, 430 U.S. at 823, and (2) "that the alleged shortcomings . . . hindered his efforts to pursue a legal claim," Lewis, 518 U.S. at 351. To satisfy the second element, White argues that Defendants' conduct "caused [him] to miss [his] deadline to withdraw [his] guilty plea in [his] criminal case" and that he "was unable to properly address the deficiencies within [his] criminal case and because of this, [he] was sentenced to a sentence [he] didn't fully agree with." (White Decl. ¶ 19; SAC ¶ 22.) This injury—prejudice in his underlying criminal case—could have been remedied in the "alternative remedial structure" of habeas corpus review. Cf. Holmes v. Grant, No. 03-cv-3426 (RJH) (RLE), 2006 WL 851753, at *13 (S.D.N.Y. Mar. 31, 2006) ("[A]n alternative course of action with respect to this claim is to file [a] habeas petition . . . ."). The Supreme Court has recognized under comparable circumstances that "the habeas remedy, if necessity required its use, would have provided a faster and more direct route to relief than a suit for money damages." Abbasi, 137 S. Ct. at 1863. White filed a habeas petition in his criminal case but argued only that his defense counsel was ineffective for failing to move to withdraw his guilty plea. Boodie v. United States, No. 15-cv-2864 (FB),

2017 WL 507281, at *1 (E.D.N.Y. Feb. 7, 2017). In addition to the availability of an alternative remedy, "special factors counsel[] hesitation," Abbasi, 137 S. Ct. at 1859, in extending Bivens to this context. As Defendants note, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." Id. at 1865. As the Supreme Court observed in Abbasi, in passing the PLRA, Congress did "not provide for a standalone damages remedy against federal jailers," which could "suggest[] Congress chose not to extend the Carlson damages remedy to cases involving other types of prisoner mistreatment." Id.

Accordingly, the Court dismisses White's access to courts claims because he has no Bivens right of action through which he can assert them.

### B. First Amendment Retaliation

Defendants also contend that White does not have a Bivens right of action to pursue his First Amendment retaliation claims. White's retaliation claims are premised on actions allegedly taken against him for filing administrative complaints in prison. Prior to Abbasi, the Second Circuit concluded that Bivens did not extend to First Amendment retaliation claims leveled against the Internal Revenue Service, see generally Hudson Valley Black Press v. IRS, 409 F.3d 106 (2d Cir. 2005), and a court in this district concluded that Bivens did not cover claims directly analogous to White's, see McGowan v. United States, 94 F. Supp. 3d 382, 385–90 (E.D.N.Y. 2015), aff'd on other grounds, 825 F.3d 118, 123–25 (2d Cir. 2016). These conclusions remain persuasive today. White has no right of action under Bivens to pursue his First Amendment retaliation claims.

The Supreme Court has "never held that Bivens extends to First Amendment claims." Reichle v. Howards, 566 U.S. 658, 663 n.4 (2012). White's claims therefore present a "new context" and the Court must determine whether he had available to him an "alternative remedial structure" or whether "special factors counsel[] hesitation." Abbasi, 137 S. Ct. at 1858, 1859.

11

Because these issues have been discussed convincingly in prior cases in this Circuit and elsewhere, the Court will not belabor its analysis. Regarding "special factors," White "is asking the courts to intermeddle in the delicate area of balancing what would be the First Amendment right to expression against the crucial security concerns inherent in a custodial setting." McGowan, 94 F. Supp. 3d at 388. Further, courts "'must approach prisoner claims of retaliation with skepticism and particular care' because claims are easily fabricated and because these claims may cause unwarranted judicial interference with prison administration." Holmes, 2006 WL 851753, at *14 (quoting Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001)). In the face of these concerns, "Congress, fully aware of the limited scope of Bivens, has sought to further condition rather than expand the remedy" by enacting the PLRA. McGowan, 94 F. Supp. 3d at 389–90. In sum, White's "retaliation claim involves executive policies, implicates separation-of-power concerns, and threatens a large burden to both the judiciary and prison officials." Bistrain v. Levi, 912 F.3d 79, 96 (3d. Cir. 2018). For those reasons, "[n]ationwide, district courts seem to be in agreement that, post-Abbasi, prisoners have no right to bring a Bivens action for violation of the First Amendment." Id. (quoting Akande v. Philips, No. 17-cv-1243 (EAW), 2018 WL 3425009, at *8 (W.D.N.Y. July 11, 2018) (collecting cases)). The Court "thus conclude[s] that the special factors analysis prevents an extension of Bivens to cover" White's First Amendment retaliation claims. Id.

### C. Non-Medical Conditions of Confinement

Defendants also move for summary judgment on the basis that White has no Bivens right of action with respect to his non-medical conditions of confinement claims, which include restriction of recreation time, (SAC ¶ 3) and denial of clothing and toiletries, (SAC ¶¶ 11, 12, 15).

### 1. Source of the Constitutional Right

In its original Memorandum and Order, the Court interpreted both the conditions of confinement and excessive force claims to arise out of the Fifth Amendment. (2016 M&O at 19–22.) But the Court subsequently questioned that interpretation sua sponte and requested supplemental briefing on the issue of whether "the Fifth Amendment or the Eighth Amendment appl[ies] to White's excessive force and other conditions-of-confinement claims." (D.E. # 84 at 3.)[5] Although the Supreme Court once stated that "the Eighth Amendment's protections d[o] not attach until after conviction and sentence," Graham v. Connor, 490 U.S. 386, 392 n.6 (1989) (emphasis added), it has more recently highlighted conviction as the moment when "measure[s] protecting the presumptively innocent" detach. Betterman v. Montana, 136 S. Ct. 1609, 1614 (2016). The Betterman Court noted: "postconviction incarceration is considered punishment for the offense." Id. at 1617 n.9 (emphasis added). The Second Circuit recognized the split of authorities on which amendment protects convicted but unsentenced inmates in Iqbal v. Hasty, 490 F.3d 143, 162 n.8 (2d Cir. 2007), and has more recently suggested that the Eighth Amendment applies. See, e.g., Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) (contrasting pretrial detainees' and convicted prisoners' claims of unconstitutional conditions of confinement and noting that "Eighth Amendment protections [are] available" to the latter (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)). Accordingly, the Court joins the majority of courts that have concluded that a post-conviction, pre-sentencing inmate is protected by the Eighth Amendment. See Berry v. City of Muskogee, Okla., 900 F.2d 1489, 1493 (10th Cir. 1990);

---

[5] The Court thanks The Legal Aid Society Prisoners' Rights Project; Prisoners' Legal Services of New York; and Paul, Weiss, Rifkind, Wharton & Garrison LLP for their helpful amicus brief addressing this issue. (D.E. # 93.)

Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir. 1994); Resnick v. Hayes, 213 F.3d 443, 448 (9th Cir. 2000); Tilmon v. Prator, 368 F.3d 521, 523–24 (5th Cir. 2004) (per curiam).

### 2. Availability of Bivens Action

White's non-medical conditions of confinement claims "bear little resemblance" to "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma," and therefore present a "new Bivens context" under Abbasi. Abbasi, 137 S. Ct. at 1860; see also Gonzalez v. Hasty, 269 F. Supp. 3d 45, 64 (E.D.N.Y. 2017), aff'd on other grounds, 2018 WL 5960773 (2d Cir. Nov. 14, 2018).

On these claims, the "special factors" counsel against extending a Bivens remedy. As the Abbasi Court stated, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." Abbasi, 137 S. Ct. at 1865. It continued:

> Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. See 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. . . . But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the Carlson damages remedy to cases involving other types of prisoner mistreatment.

Id. The same logic applies to White's claims. In Gonzalez v. Hasty, the court persuasively concluded that "there is [an] additional factor [counseling hesitation] that plaintiff's Eighth Amendment allegations are petty and nowhere near the substantially serious conduct the Supreme Court has recognized in Carlson." 269 F. Supp. 3d at 65. As in Gonzalez, the nature of White's non-medical complaints about his confinement provide less reason to extend a Bivens right of action than the medical indifference that resulted in a plaintiff's death in Carlson v. Green. The

Court therefore grants summary judgment in favor of Defendants on White's non-medical conditions of confinement claims.

## III. Merits

White has three remaining claims: (1) deliberate indifference to his medical needs, (SAC ¶ 20); (2) the Henderson Excessive Force Claims, (SAC ¶¶ 17, 19); and (3) the Gonzalez Excessive Force Claim, (SAC ¶ 14).

### A. Additional Briefing

The Defendants have requested additional briefing on the excessive force and conditions of confinement claims if the Court decides, as it has, that the Eighth Amendment, rather than the Fifth Amendment, applies. (D.E. # 88 at 13–15.) But it is not clear what purpose that would serve. As to the excessive force claims, Defendants have not argued in any of their papers that White does not have a Bivens remedy. (See generally Def. Br. at 8–17 (specifying certain claims for which White does not have a Bivens remedy, but not including excessive force); D.E. # 88 (arguing White cannot meet the standard for excessive force under the Eighth Amendment but not arguing there is no Bivens remedy at all).) Defendants argue in their supplemental briefing that they need additional briefing because White cannot meet the standard for excessive force under the Eighth Amendment. However, Defendants' original summary judgment brief, which put forward the same argument, cited to Eighth Amendment case law. (Def. Br. at 26–29 (citing, inter alia, Hudson v. McMillan, 503 U.S 1, 6, (1992), which Defendants rely on in their supplemental briefing).) Because Defendants' Eighth Amendment merits arguments are already before the Court, the Court declines to allow further briefing on the topic.

As to the deliberate indifference to medical needs claim, Defendants assert in their supplemental brief, with no explanation, that White cannot maintain a Bivens action for his conditions of confinement claims, without specifying which ones. (D.E. # 88 at 13.) Because the

15

Court has already decided that White's non-medical conditions of confinement claims cannot proceed under Bivens, and because Defendants have not previously argued that White cannot maintain a Bivens action for his deliberate indifference to medical needs claim, there is no need for supplemental briefing on this topic based on one conclusory sentence in Defendants' supplemental brief.

### B. Substantive Arguments

#### 1. Deliberate Indifference to Medical Needs

Although Defendants' brief states in conclusory fashion that "the undisputed material facts establish that the individual Defendants never violated any of [White's] constitutional rights," (Def. Br. at 17), they have not submitted any merits arguments on White's deliberate indifference to medical needs claim, arguing only that White failed to exhaust the claim that he was "denied medical treatment after Lieutenant Henderson allegedly assaulted him," (id. at 7). Defendants do not address White's allegation that he was denied medical treatment after Lieutenant Gonzalez allegedly assaulted him. (See generally Def. Br.) Having rejected Defendants' exhaustion arguments, summary judgment on White's claim for deliberate indifference to medical needs, (SAC ¶ 20), is denied. Cf. Black v. Anheuser-Busch in Bev, No. 14-cv-2693 (RWS), 2016 WL 3866583, at *7 (S.D.N.Y. July 13, 2016) ("The burden of demonstrating summary judgment is appropriate is on defendant. No argument having been made that summary judgment is appropriate with respect to any contract related claims, these claims survive." (citations omitted)); see also Local Civil Rule 7.1(a)(2) (requiring a memorandum of law to "set[] forth the cases and other authorities relied upon in support of the motion").

## 2. Henderson Excessive Force Claims

Similarly, Defendants have not submitted any merits arguments on the Henderson Excessive Force Claims, arguing only that White failed to exhaust those claims, (Def. Br. at 7). Therefore, for the same reason that summary judgment is denied on White's claim for deliberate indifference to his medical needs, summary judgment is denied on the Henderson Excessive Force Claims, (SAC ¶¶ 17, 19).

## 3. Gonzalez Excessive Force Claims

"To state an Eighth Amendment excessive force claim, an inmate must establish that the conduct alleged is 'sufficiently serious' to reach constitutional dimensions." Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "While de minimis uses of force are 'necessarily excluded from constitutional recognition,' 'when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident.'" Id. (first quoting Wilkins v. Gaddy, 559 U.S. 34, 37 (2010); then quoting Hudson, 503 U.S. at 9) (alteration in original). "The 'core judicial inquiry' . . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 7).

The Second Amended Complaint, the allegations of which White has sworn are true, alleges that, on February 13, 2013, "Gonzalez entered into [White's] cell . . . while [he] was in full restraints and assaulted [him]," and that Gonzalez "continued to threaten [him] while grabbing [him] by the neck and pressing [his] head against the wall, while telling [him] he would kill [him]." (SAC ¶ 14; White Decl. ¶ 4.) White further swore that, due to the "continued assaults," he developed PTSD and back pains. (White Aff. ¶¶ 6–7.) For his part, Defendant Gonzalez denies

17

choking or threatening White. (Gonzalez Decl. ¶ 9.) He also asserts that he used force only after White assaulted an officer, threatened other officers, and refused to submit to restraints, (id. ¶ 5); his use of force was in compliance with a BOP Program Statement, (id. ¶ 10); and White received medical treatment that revealed no injury, (id. ¶¶ 5–6.) Defendants provided, attached to their reply, White's disciplinary record, which reflects two "sanctioned incident[s]" on February 13, 2013, whereby White was charged with "assaulting w/o serious injury." (D.E. # 79-1 at 1, 2.) This record appears to corroborate Gonzalez's account, but Defendants do not explain how to interpret the record, which is not clear on its face as to whether White was adjudicated guilty on those charges.

Although Defendants claim on their version of the facts that "any use of force . . . was necessitated by [White's] assaults on staff and refusals to submit to orders to maintain the safety and security of the staff and facility," (Def. Br. at 28), Defendants fail to appreciate that there are materially disputed facts about key details of the alleged offense, including the amount of force used, whether force was used while White was restrained, and whether Gonzalez threatened White. These disputed facts preclude granting Defendants' motion for summary judgment on the Gonzalez Excessive Force Claim. Moreover, Defendants' suggestion that a use of force is actionable only if it is "repugnant to the conscience of mankind" is a misstatement of the law. (Id.) That rule applies only to "de minimis uses of physical force." Wilkins, 559 U.S. at 38. White's testimony does not establish a de minimis use of force; he testifies that his life was threatened and that he was pressed against a wall in a way that caused long-term back pain and PTSD. (SAC ¶ 14; White Decl. ¶ 4.)

Lastly, relying on Greene v. Mazzuca, 485 F. Supp. 2d 447 (S.D.N.Y. 2007), Defendants argue that because White suffered PTSD, not a physical injury, his claim fails because plaintiff

"must show injury or damage resulting from the alleged harassment" to state a claim. (Def. Br. 29.) However, White claims to have suffered more than PTSD—he also claims a back injury stemming from his alleged assault. (White Aff. ¶ 6.) And the Supreme Court in Hudson v. McMillian "aimed to shift the 'core judicial inquiry' from the extent of the injury to the nature of the force." Wilkins, 559 U.S. at 39. "To conclude . . . that the absence of 'some arbitrary quantity of injury' requires automatic dismissal of an excessive force claim improperly bypasses this core inquiry." Id. (quoting Hudson, 503 U.S. at 9).

For those reasons, the Court denies summary judgment on the Gonzalez Excessive Force Claim.

## IV. Qualified Immunity

Defendants further rely on the doctrine of qualified immunity if the Court finds that White has raised actionable claims. (Def. Br. at 29–30.) The same disputes of fact that preclude summary judgment on the merits preclude summary judgment on the issue of qualified immunity. If a jury credits White's testimony that he was assaulted by Gonzalez while fully restrained and that Gonzalez threatened his life in the process, "a reasonable person would have known" that such conduct "violate[s] clearly established . . . constitutional rights." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).

## V. Sovereign Immunity

Lastly, Defendants argue that any claims against Defendants in their official capacities must fail because the Court lacks subject matter jurisdiction. (Def. Br. at 30.) "[A]ction[s] against . . . federal officers in their official capacities [are] essentially . . . suit[s] against the United States," and are therefore barred under the doctrine of sovereign immunity, unless there is an immunity waiver. Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994). There has been no such waiver in this case, and White does not respond to this argument, (see generally

White Decl.). To the extent the Second Amended Complaint asserts claims against the Defendants in their official capacities, summary judgment on those claims is granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Defendants' motion for summary judgment is granted on the following claims: (1) White's claims that he was denied access to courts; (2) White's non-medical conditions of confinement claims, based on denial of recreation time, change of clothes, and toiletries; and (3) White's First Amendment retaliation claims. Those claims are accordingly dismissed. White's surviving claims are for (1) excessive force arising out of the assault allegedly perpetrated by Lieutenant Gonzalez on February 13, 2013; (2) excessive force arising out of the assaults allegedly perpetrated by Lieutenant Henderson sometime between February and March of 2013; and (3) deliberate indifference to White's medical needs for failing to provide medical treatment following those alleged assaults. The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Order at White's listed address.

SO ORDERED.

Dated: March 31, 2020
 Brooklyn, New York

 　/s/ Carol Bagley Amon　　　　　
 Carol Bagley Amon
 United States District Judge